## MATTER OF TRUJILLO

### In Deportation Proceedings

### A-16031874

*Decided by Board February 14, 1977*

Respondent would not be precluded from showing that he was a person of good moral character within the meaning of section 101(f)(2) of the Immigration and Nationality Act notwithstanding involvement in an adulterous relationship, where the relationship did not destroy a prior existing viable marriage. See *Wadman* v. *INS*, 329 F.2d 812 (9 Cir. 1964). *Brea-Garcia* v. *INS*, 531 F.2d 693 (3 Cir. 1976) distinguished.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Crewman—remained longer

ON BEHALF OF RESPONDENT: Pro se

BY: Milhollan, Chairman; Wilson, Torrington, Maniatis, and Appleman, Board Members

In a decision dated September 13, 1976, an immigration judge found the respondent deportable, denied his application for voluntary departure, and ordered his deportation to El Salvador. The respondent has admitted the allegations in the Order to Show Cause, but has appealed from the decision denying voluntary departure. The appeal will be sustained and the respondent will be allowed to depart the United States voluntarily.

The respondent is a 32-year-old native and citizen of El Salvador who entered the United States as a crewman on October 28, 1974. He was authorized to remain as long as the vessel on which he arrived remained in port, in no event to exceed 29 days. He failed to depart and had remained without authorization. Deportability under section 241(a)(1) of the Act, as a crewman who has remained longer than authorized, has therefore been established by clear, convincing, and unequivocal evidence.

The immigration judge found the respondent ineligible for the privilege of voluntary departure because he was foreclosed from establishing the requisite good moral character under section 101(f)(2) of the Act. This section precludes anyone who has committed adultery within the required period from establishing good moral character during that period.

453

At the hearing, the respondent testified that he was living with a woman, a United States citizen, who was married to someone else, but that she had been separated from her husband for over three years. We have received documentation which shows that this woman received a divorce from her prior husband on July 27, 1976. Subsequently, she married the respondent on September 20, 1976, and bore him a United States citizen child on October 17, 1976. These facts are attested to in a sworn statement executed by the respondent and his United States citizen wife—notarized and dated January 19, 1977.

The alleged adultery, in this case, took place in the same jurisdiction, New Jersey, as that discussed in the case of *Brea-Garcia* v. *INS*, 531 F.2d 693 (3 Cir. 1976). In *Brea-Garcia, supra*, the court found that the immigration judge may properly look to the definition of adultery contained in the New Jersey civil law in applying section 101(f)(2) of the Immigration and Nationality Act. The factual situation before us is quite different from that which confronted the Court of Appeals in *Brea-Garcia, supra.* There the court stated:

> In the instant case, the conduct was neither isolated nor inconsequential. The immigration judge found that 'a viable marriage was apparently destroyed by respondent's [Brea-Garcia] adulterous relationship.' *Brea-Garcia, supra,* at 698.

Here, however, there is nothing in this record to indicate that the respondent's wife's first marriage was destroyed by her relationship with the respondent. On the contrary, the record shows that the respondent's wife had been separated from her husband for almost three years and a divorce was in fact obtained prior to the time the respondent was issued an Order to Show Cause on August 31, 1976. Moreover, as the respondent did not enter the United States until October, 1974, it is unlikely that he began any relationship with his present wife until well after she had separated from her prior husband. Thus, the case before us is distinguishable from *Brea-Garcia, supra.*

Our decision follows the position taken by the Court of Appeals for the Ninth Circuit in *Wadman* v. *INS*, 329 F.2d 812 (9 Cir. 1964). In the *Wadman* case, the court defined adultery as "that extramarital intercourse which tends to destroy an existing marriage; which evidences disregard of marital vows and responsibilities." *Wadman, supra,* at 817. Several other Federal courts have supported his position. *Moon Ho Kim* v. *INS*, 514 F.2d 179 (D.C. Cir. 1975); *Petition of Schroers*, 336 F. Supp. 1348 (S.D.N.Y. 1971); *In re Edgar*, 253 F. Supp. 951 (E.D. Mich. 1966), *In re Briedis*, 238 F. Supp. 149 (N.D. Ill. 1965).

The respondent's relationship with his present wife does not seem to have destroyed a prior existing viable marriage. Her marriage was apparently "dead" before she ever met the respondent and she did obtain a divorce before the respondent was issued an Order to Show

Cause. Thus, his actions did not constitute adultery within the meaning of section 101(f)(2) of the Act.

On appeal, the respondent raises the possibility of an application for adjustment of status. However, he entered the United States as a crewman and is therefore ineligible for that relief under section 245(a) of the Act.

The respondent does not appear to be otherwise ineligible for the privilege of voluntary departure. Inasmuch as he, allegedly, is the sole support of his United States citizen wife and their citizen child, the respondent has established sufficient equities upon which to base a favorable grant of discretionary relief. Accordingly, we shall sustain the appeal.

ORDER: The appeal is sustained.

FURTHER ORDER: The outstanding order of deportation is withdrawn and the respondent is hereby permitted to depart from the United States voluntarily without expense to the Government, to any country of his choice, within 30 days from the date of this order or any extension beyond that time as may be granted by the District Director. In the event of failure so to depart, the order of deportation will be reinstated and executed.